UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DANIEL RATLIFF,                          No. 3:12-cv-02326-HU

           Plaintiff,                    **FINDINGS AND
                                          RECOMMENDATION**

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

           Defendant.
_____

Linda S. Ziskin
P.O. Box 735833
Las Vegas, NV 89136

Martin R. Cohen
4040 Douglas Way
P.O. Box 1229
Lake Oswego, OR 97305

      Attorneys for Plaintiff

S. Amanda Marshall
United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201-2902

David J. Burdett
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff Daniel Ratliff ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Titles II the Social Security Act. The only disputed issue on appeal is whether the Administrative Law Judge ("ALJ") erred in concluding, at step five of the five-step sequential evaluation process, that Plaintiff could perform work which exists in significant numbers in the national economy based upon the vocational expert's ("VE") testimony regarding the job of office helper.[1]    This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).    For the reasons that follow, the Commissioner's decision should be affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 30, 2009. (Tr. 18.) Plaintiff's application alleged a disability onset date of July 17, 2009. (Tr. 18.)  The application was denied initially on March 2, 2010, and upon reconsideration on May 20, 2010. (Tr. 18.) Plaintiff appeared and testified at a hearing held on May 24, 2011, before ALJ Eleanor Laws. (Tr. 18.)  At the time, Plaintiff was a

---

[1] Plaintiff also argued that the ALJ erred when she found that he could perform the job of loss prevention monitor. The Commissioner, however, disclaimed any reliance on the ALJ's conclusion that Plaintiff could perform the job of loss prevention monitor "due to the confusion as to the nature of the actual occupation intended by the VE." (Def.'s Br. at 4.)  In the event the Court disagrees with the Commissioner regarding the job of office helper, the Commissioner contends that "the case should be resolved by remanding for further development as to the true applicability of the occupation of loss prevention monitor to a person in Plaintiff's circumstances." (Def.'s Br. at 4-5.)

Page 2 - FINDINGS AND RECOMMENDATION

forty-six year old high school graduate who was studying business at Portland Community College and served as a tutor at his church. (Tr. 40-41, 55-56, 75.)   His work history included time as an aircraft mechanic, painter's assistant, heating, ventilation, and air conditioning ("HVAC") technician, and electrician helper. (Tr. 69-74.)

At the hearing, the ALJ elicited testimony from the VE.  The ALJ asked the VE to consider a person of Plaintiff's age, education and vocational background, who is able to: (1) lift and/ or carry twenty pounds occasionally and ten pounds frequently (extertional limitation); (2) push and/ or pull twenty pounds occasionally and ten pounds frequently (extertional limitation); (3) climb ladders, ropes and scaffolds occasionally (postural limitation); and (4) climb ramps and stairs frequently (postural limitation). (Tr. 76.) After ruling out Plaintiff's past relevant work, the VE testified that an individual with these limitations could, at minimum, perform the light duty, unskilled jobs of repack room worker, light janitorial worker or shelving clerk.[2]  (Tr. 76-79.)   The VE also confirmed that these jobs were appropriate for a hypothetical individual limited to simple, routine tasks.[3]  (Tr. 78-79.)

The ALJ then altered the hypothetical by asking the VE to assume that the hypothetical individual described by the ALJ could only: (1) perform simple, routine tasks; (2) balance, stoop, kneel,

_____

[2] The VE was asked to limit her responses to unskilled work because the ALJ wanted to avoid having to assess the transferability of Plaintiff's job skills in light of his age. (Tr. 77.)

[3] This will be referred to by the Court as the ALJ's first hypothetical.

Page 3 - FINDINGS AND RECOMMENDATION

crouch, crawl, or climb ladders, ropes, scaffolds, ramps and stairs
occasionally (postural limitations); and (3) sit or stand two hours
in an eight-hour workday (extertional limitations).[4] (Tr. 80.) The
VE testified that an individual with these limitations could
perform two unskilled, sedentary jobs that exist in significant
numbers in the regional and national economy: an office helper
(8,000 positions in Oregon and 320,000 positions nationally) and
loss prevention monitor.  (Tr. 80.)  The VE also confirmed that
these jobs were appropriate for a hypothetical individual limited
to frequent handling (manipulative limitation), but they would not
be appropriate for an individual limited to occasional handling.[5]
(Tr. 81.)

    In a final hypothetical, the ALJ essentially asked the VE to
disregard any "extertional or any other limitations" and assume
that the hypothetical individual would experience deficits in
concentration that would cause the person to "be off task,
resulting in production falling below [eighty] percent of the
average worker, on average."[6]  (Tr. 81.)  The VE testified as
follows: "That would preclude sustained gainful work. The
[hypothetical] person would not be able to meet the demands of
competitive employment." (Tr. 81.)

_____

[4] This will be referred to by the Court as the ALJ's second
hypothetical.

[5] While being questioned by Plaintiff's counsel, the VE
confirmed that the job of office helper required the higher
standard of frequent handling (two-thirds of the workday), even
though she apparently "didn't notice that" the ALJ asked about
whether occasional handling would preclude such work.  (Tr. 85.)

[6] This will be referred to by the Court as the ALJ's third
and/or final hypothetical.

Page 4 - FINDINGS AND RECOMMENDATION

1    After the ALJ's questioning, Plaintiff's counsel altered the
2   second hypothetical already posed to indicate that the hypothetical
3   individual was limited to only occasional contact with coworkers,
4   supervisors and the general public. (Tr. 81-82.) In particular,
5   the VE testified that the job of office helper would require more
6   than occasional contact with coworkers or supervisors. (Tr. 82)
7   ("So when you say occasional and it's restricted to one-third of
8   the day, even though it's casual with coworkers, it just exists.
9   And you have to be open for any interactions with the supervisor,
10  because it's on his terms.")

11   Plaintiff's counsel then posed the following question to the
12  VE regarding her prior testimony: "[Y]ou had mentioned . . . [that]
13  the office helper [job] . . . [is] listed as light in the
14  [Dictionary of Occupational Titles], but recent additions showed
15  significant numbers of sedentary work, and you listed those. What
16  did you mean by that? I mean, the DOT hasn't been published for
17  decades." (Tr. 82.) The VE explained that her statement was based
18  on more up-to-date information from employment statistics, the
19  Occupational Outlook Handbook, the U.S. Census Bureau, and the
20  Bureau of Labor and Industries. (Tr. 83.) These sources,
21  according to the VE, reflect the fact that technological advances
22  have reduced the extertional demands of the office helper position,
23  even though it's listed as light duty under the DOT. (Tr. 83.) In
24  other words, the VE was explaining her deviation from the
25  DOT——namely, why she limited her response to the second
26  hypothetical to sedentary positions (8,000 positions in Oregon), as
27  opposed to light duty position (22,000 to 25,000 positions). (Tr.
28  84.)

Page 5 - FINDINGS AND RECOMMENDATION

1  On June 8, 2011, the ALJ issued a decision denying Plaintiff's

2  claim for benefits.  (Tr. 28.)  Plaintiff then requested review of

3  the ALJ's decision, which was subsequently denied by the Appeals

4  Council on November 6, 2012.  (Tr. 1-3.)  As a result, the ALJ's

5  decision became the final decision of the Commissioner that is

6  subject to judicial review.  (Tr. 1-2.)  This appeal followed on

7  December 26, 2012.

8  **II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

9  **A.   Legal Standard**

10  A claimant is considered disabled if he or she is unable to

11  "engage in any substantial gainful activity by reason of any

12  medically determinable physical or mental impairment which . . .

13  has lasted or can be expected to last for a continuous period of

14  not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "Social

15  Security Regulations set out a five-step sequential process for

16  determining whether an applicant is disabled within the meaning of

17  the Social Security Act."  *Keyser v. Comm'r Soc. Sec. Admin.*, 648

18  F.3d 721, 724 (9th Cir. 2011).  Those five steps are as follows:

19  (1) Is the claimant presently working in a substantially
    gainful activity?  (2) Is the claimant's impairment
20  severe?  (3) Does the impairment meet or equal [one of
    the listed impairments]?  (4) Is the claimant able to
21  perform any work that he or she has done in the past? and
    (5) Are there significant numbers of jobs in the national
22  economy that the claimant can perform?

23  *Keyser*, 648 F.3d at 724-25.  The claimant bears the burden of proof

24  for the first four steps in the process.  If the claimant fails to

25  meet the burden at any of those four steps, then the claimant is

26  not disabled.  *Bustamante v Massanari*, 262 F.3d 949, 953-54 (9th

27  Cir. 2001); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

28

Page 6 - FINDINGS AND RECOMMENDATION

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails meet this burden, then the claimant is disabled, but if the Commissioner proves the claimant is able to perform other work which exists in the national economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

**B.    The ALJ's Decision**

At the first step of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 17, 2009, the alleged disability onset date. (Tr. 20.) At the second step, the ALJ found that Plaintiff had the following severe impairments: left ankle arthritis and tendon tear, depression and obstructive sleep apnea. (Tr. 20.)

At the third step, the ALJ found that Plaintiff's combination of impairments were not the equivalent of those on the Listing of Impairments.[7]    (Tr. 22.)    The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and found he could perform light work, subject to the following limitations: (1) Plaintiff can lift twenty pounds occasionally and ten pounds frequently; (2)

---

[7] The Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and described at 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

Page 7 - FINDINGS AND RECOMMENDATION

Plaintiff can walk and stand a total of two hours in an eight-hour workday; (3) Plaintiff can sit a total of six hours in an eight-hour workday; (4) Plaintiff can occasionally climb, crawl, crouch, stoop, bend, and kneel; and (5) Plaintiff can perform only simple, routine tasks.  (Tr. 23.)

At the fourth step, the ALJ found that Plaintiff is unable to perform any past relevant work as an aircraft mechanic, painter's assistant, HVAC technician, and electrician helper. (Tr. 26.)  In light of Plaintiff's age, education, work experience, and RFC, at the fifth step, the ALJ found that there were jobs existing in significant numbers in the national and local economy that he could perform, including an office helper and loss prevention monitor. (Tr. 27.)  Based on the finding that Plaintiff could perform jobs existing in significant numbers in the national economy, the ALJ concluded that he was not disabled as defined in the Act from July 17, 2009 (the alleged disability onset date), through June 8, 2011 (the date of the ALJ's decision).  (Tr. 27-28.)

**III. DISCUSSION**

**A.   Standard of Review**

The court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'"  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  Substantial evidence is "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

1  The court "cannot affirm the Commissioner's decision 'simply
2  by isolating a specific quantum of supporting evidence.'" *Holohan*
3  *v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*,
4  180 F.3d at 1097).  Instead, the court must consider the entire
5  record, weighing both the evidence that supports the Commissioner's
6  conclusions, and the evidence that detracts from those conclusions.
7  *Holohan*, 246 F.3d at 1097.  However, if the evidence as a whole can
8  support more than one rational interpretation, the ALJ's decision
9  must be upheld; the court may not substitute its judgment for the
10  ALJ's.  *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d
11  1149, 1152 (9th Cir. 2007)).

12  **B.   The ALJ's Step Five Determination**

13  As discussed above, the sole issue for the Court to decide is
14  whether the ALJ erred when she concluded, at step five, that
15  Plaintiff could perform work which exists in significant numbers in
16  the national economy based upon the VE's testimony regarding the
17  job of office helper.[8]  *See generally Tamayo v. Colvin*, No. 12-cv-
18  8484, 2013 WL 5651420, at *2 (C.D. Cal. Oct. 11, 2013) ("The
19  Commissioner's burden . . . is satisfied by showing the existence
20  of only one job with a significant number of available positions
21  that the claimant can perform.") (citation omitted).

22  Plaintiff argues that "the VE's testimony as a whole was so
23  uncertain and reliable [sic] that it is tainted and useless as
24  substantial evidence upon which the ALJ may base her [s]tep [five]

25

26

27  [8] In his reply brief, Plaintiff indicated that he "agree[d]
   the job of loss prevention monitor should be stricken from
28  consideration [on appeal], leaving only [the job of] office helper
   as a possibility at [s]tep [five]."  (Pl.'s Reply at 2.)

Page 9 - FINDINGS AND RECOMMENDATION

finding, on any of the jobs suggested by this VE." (Pl.'s Reply at 2; Pl.'s Opening Br. at 2.)  Citing the ALJ's final hypothetical, Plaintiff also argues that the VE testified that he could not perform the job of office helper.  (Pl.'s Opening Br. at 12; Pl.'s Reply at 3.)

Taking the latter argument first, the Court disagrees with Plaintiff's characterization of the VE's testimony regarding the job of office helper.  With a few minor exceptions, the VE provided clear and concise answers to the questions posed by the ALJ, and the VE asked for clarification when it was necessary.  Plaintiff has failed to present a specific and legitimate argument that would warrant the outright rejection of the VE's testimony regarding the job of office helper.  Without more, the Court cannot say that a remand to the agency is warranted on this ground.

Plaintiff's second argument is that the VE testified he could not perform the job of office helper based on the ALJ's third and final hypothetical.  The Court disagrees.  At step two, the ALJ concluded that Plaintiff suffered from the severe mental impairment of depression, despite medical evidence to the contrary.  (Tr. 20-21.)  As the ALJ explained in her written opinion, "the undersigned gives the claimant the benefit of the doubt and finds that depression is a severe impairment.  The [RFC] reflects limitations caused by this condition with a limitation to simple routine tasks.  Given that the claimant is passing college-level business courses as discussed herein, this limitation is generous."  (Tr. 22.)

At step three, the ALJ concluded that Plaintiff had moderate difficulties with respect to concentration, persistence or pace.  (Tr. 22.)  As the ALJ explained in her written opinion,

Page 10 - FINDINGS AND RECOMMENDATION

[t]he claimant describes difficulties with memory, focus, and 'zoning out' during conversation. Yet, he earned average to above average grades while taking math and science classes. He also testified that he is a math tutor for children at church.

. . . .

. . . Though the claimant's symptoms of depression have waxed and waned since the alleged onset date, the undersigned finds that evidence received at the hearing . . . supports moderate limitations on concentration, persistence, and pace.

(Tr. 22-23.)

In the next paragraph, the ALJ acknowledged that she is required to set forth "a more detailed assessment" of Plaintiff's RFC, citing Social Security Regulation ("SSR") 96-8p. *See* SSR 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' [such as limitations on concentration, persistence or pace] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps [two] and [three] of the sequential evaluation process").

The ALJ then proceeded to assess Plaintiff's RFC and found, among other things, that he could "perform only simple, routine tasks." (Tr. 23.) The ALJ also made clear that Plaintiff's RFC reflected the degree of limitation she "found in the 'paragraph B' mental function analysis." (Tr. 23.) In formulating the second hypothetical that ultimately served as the basis for the June 8, 2011 decision, the ALJ asked the VE to assume that the hypothetical individual described by the ALJ could only perform simple, routine tasks. (Tr. 80.)

It's evident from the written opinion and hearing transcript that the ALJ's limitation to simple, routine tasks reflected the

Page 11 - FINDINGS AND RECOMMENDATION

degree of limitation she found in concentration, persistence or pace. As long as the ALJ's decision is supported by the medical evidence, a limitation to simple, routine work can account for moderate difficulties in concentration, persistence or pace. *See Bickford v. Astrue*, No. 09-833-KI, 2010 WL 4220531, at *11-12 (D. Or. Oct. 19, 2010) ("[S]o long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace"); *see also Bruesch v. Colvin*, No. 3:12-cv-01453-HU, 2014 WL 287883, at *9 (D. Or. Jan. 23, 2014) (holding that "unskilled instructions" in a hypothetical question posed to the VE adequately incorporated moderate limitations in concentration, persistence, or pace).

Plaintiff does not appear to challenge whether a limitation to simple, routine tasks adequately encapsulates his limitation in this area. Instead, he cites the ALJ's third and final hypothetical for the proposition that, "[s]ince a limitation such as 'moderate' must be quantified for the VE, . . . the ALJ properly converted 'moderate' to a [twenty percent] deficit [in Plaintiff's ability to focus]." (Pl.'s Opening Br. at 12; Pl.'s Reply Br. at 2-3.) The third hypothetical clearly did not serve as the basis for the ALJ's decision. Nor did it reflect the degree of impairment the ALJ assessed in Plaintiff's concentration, persistence or pace. In addition, the third hypothetical concerns a hypothetical individual whose deficits in concentration would result "in production falling below [eighty] percent of the average worker, on average." (Tr. 80.) That is materially different from the ALJ suggesting that Plaintiff suffered from a twenty percent

Page 12 - FINDINGS AND RECOMMENDATION

reduction in concentration, persistence or pace, or that Plaintiff's production is twenty percent below that of an average worker.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision should be affirmed.

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **March 17, 2014.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **April 3, 2014.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  24th  day of February, 2014.

/s/ Dennis J. Hubel
_____
                DENNIS J. HUBEL
          United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION